IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| LISA BONNER, § <br> § <br> *Plaintiff*, § <br> § <br> v. § <br> § <br> NANCY A. BERRYHILL, § <br> COMMISSIONER OF THE § <br> SOCIAL SECURITY ADMINISTRATION, § <br> § <br> *Defendant*. § | Civil Action No.: 4:17-CV-0641 |

## MEMORANDUM AND ORDER

Plaintiff Lisa Bonner (Bonner) filed this case under the Social Security Act, 42 U.S.C. §§ 405(g) for review of the Commissioner's final decision denying her request for social security disability insurance benefits. Bonner and the Commissioner moved for summary judgment (Dkts. 12, 15). After considering the pleadings, the record, and the applicable law, the court **DENIES** Bonner's motion, **GRANTS** the Commissioner's motion, and **AFFIRMS** the final decision of the Commissioner.[1]

### I. Background

**1. Factual and Administrative History**

Bonner filed a claim for social security disability insurance benefits on December 12, 2013, alleging the onset of disability as of October 11, 2012 due to depression, bipolar disease, anxiety, panic attacks, and chronic neck and back pain. Dkt. 7-6 at 2; 7-7 at 36. Her claim was denied on initial review and reconsideration. The administrative law judge (ALJ) held a hearing

---

[1] The parties have consented to the jurisdiction of this magistrate judge for all purposes, including entry of final judgment. Dkt. 10.

on November 6, 2015 at which Bonner and a vocational expert testified. The ALJ issued a decision denying benefits on December 21, 2015. The Appeals Council denied review on December 20, 2016, and the ALJ's decision became the final decision of the Commissioner. See 20 C.F.R. §§ 404.984(b)(2) and 416.1484(b)(2).

2. **Standard for District Court Review of the Commissioner's Decision**

Section 405(g) of the Act governs the standard of review in social security disability cases. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). Federal court review of the Commissioner's final decision to deny Social Security benefits is limited to two inquiries: (1) whether the Commissioner applied the proper legal standard; and (2) whether the Commissioner's decision is supported by substantial evidence. *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999).

With respect to all decisions other than conclusions of law,[2] "[i]f the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence has also been defined as "more than a mere scintilla and less than a preponderance." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002) (quoting *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)). When reviewing the Commissioner's decision, the court does not reweigh the evidence, try the questions *de novo*, or substitute its own judgment for that of the Commissioner. *Masterson*, 309 F.3d at 272. Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Id.* The courts strive for judicial review that is

---

[2] Conclusions of law are reviewed *de novo*. *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981).

"deferential without being so obsequious as to be meaningless." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).

The court weighs four types of evidence in the record when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Wren v. Sullivan,* 925 F.2d 123, 126 (5th Cir.1991); *Hamilton-Provost v. Colvin*, 605 F. App'x 233, 236 (5th Cir. 2015).

### 3. Disability Determination Standards

The ALJ must follow a five-step sequential analysis to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; *Waters*, 276 F.3d at 718. The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990) (citing 42 U.S.C. § 423(d)(1)(A)). A finding at any point in the five-step sequence that the claimant is disabled, or is not disabled, ends the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In the first step, the ALJ decides whether the claimant is currently working or "engaged in substantial gainful activity." Work is "substantial" if it involves doing significant physical or mental activities, and "gainful" if it is the kind of work usually done for pay or profit. 20 C.F.R. §§ 404.1572, 416.972; *Copeland v. Colvin*, 771 F.3d 920, 924 (5th Cir. 2014).

In the second step, the ALJ must determine whether the claimant has a severe impairment. Under applicable regulations, an impairment is severe if it "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.20(c).

Under binding Fifth Circuit precedent, "[a]n impairment can be considered as not severe *only if* it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000) (emphasis added) (quoting *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) ). "Re-stated, an impairment is severe if it is anything more than a "slight abnormality" that "would not be expected to interfere" with a claimant's ability to work. *Id.* This second step requires the claimant to make a *de minimis* showing. *See Anthony v. Sullivan*, 954 F.2d 289, 293 n.5 (5th Cir. 1992)." *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018).

If the claimant is found to have a severe impairment, the ALJ proceeds to the third step of the sequential analysis: whether the severe impairment meets or medically equals one of the listings in the regulation known as Appendix 1. 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment meets one of the listings in Appendix 1, the claimant is disabled. If the ALJ finds that the claimant's symptoms do not meet any listed impairment, the sequential analysis continues to the fourth step.

In step four, the ALJ must decide whether the claimant can still perform his past relevant work by determining the claimant's "residual functional capacity" (RFC). "The RFC is the individual's ability to do physical and mental tasks on a sustained basis despite limitations from her impairments." *Giles v. Astrue*, 433 Fed. App'x 241, 245 (5th Cir. 2011) (citing 20 C.F.R. 404.1545). The ALJ must base the RFC determination on the record as a whole and must consider all of a claimant's impairments, including those that are not severe. *Id.*; 20 C.F.R. §§ 404.1520(e) and 404.1545; s*ee also Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990).

The claimant bears the burden to prove disability at steps one through four, meaning the claimant must prove she is not currently working and is no longer capable of performing her past relevant work. *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). If the claimant meets her burden, the burden shifts to the commissioner at step five to show that the "claimant is capable of engaging in some type of alternative work that exists in the national economy." *Id*. Thus, in order for the Commissioner to find in step five that the claimant is not disabled, the record must contain evidence demonstrating that other work exists in significant numbers in the national economy, and that the claimant can do that work given her RFC, age, education, and work experience. *Fraga v. Brown*, 810 F.2d 1296, 1304 (5th Cir. 1998).

### 4. The ALJ's Decision

The ALJ performed the standard 5-step sequential analysis. The ALJ found that Bonner met the insured status requirements of the Social Security Act through December 31, 2018. Although she engaged in substantial gainful activity from January, 2013 until April, 2013 (after her alleged onset date), the ALJ continued the analysis because "there has been a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity. The remaining findings address the period(s) the claimant did not engage in substantial gainful activity." Dkt. 7-3 at 13. The ALJ found that Bonner had the severe impairments of bipolar disorder, anxiety disorder, panic disorder, and post-traumatic stress disorder, none of which met or equaled the severity of a listed impairment. *Id.* at 13-16.

The ALJ further found that Bonner had the residual functional capacity to perform a full range of work at all exertional levels, but with some non-exertional limitations. Specifically, the ALJ found Bonner "retains the ability to perform detailed but not complex work. She should avoid working at a forced pace/assembly line/production rate pace. She can occasionally relate to

coworkers, deal with the public and interact with supervisors." Dkt. 7-3 at 16. The ALJ found Bonner could not perform her past sedentary, skilled work as an administrative assistant. However, based on the testimony of a vocational expert in response to a hypothetical question, the ALJ concluded in step five that Bonner could perform other jobs that exist in significant numbers in the national economy, and thus was not disabled under the Act. *Id.* at 20-21.

## II. Analysis

Bonner's motion raises one point of error: that the ALJ erred by not incorporating Bonner's moderate restriction in concentration, persistence, and pace in the hypothetical question posed to the vocational expert. The Commissioner responds that the ALJ's severity rating for a mental impairment is not an RFC determination, and that the ALJ properly included all limitations supported by the record in his RFC, and in his hypothetical question. In response to the Commissioner's motion, Bonner raises the additional argument that the ALJ erred in not giving controlling weight to the opinion of Dr. Kahan, her treating psychiatrist, when determining her RFC.

1. **The § 1520(a) severity rating for a mental impairment is not the equivalent, but should be consistent with, an RFC determination.**

In evaluating the severity of a mental impairment, the ALJ uses the "special technique" of mental impairment evaluations described in the disability regulations at 20 C.F.R. § 1520a(a) ("The steps outlined in § 404.1520 apply to the evaluation of physical and mental impairments. In addition, when we evaluate the severity of mental impairments for adults . . . . we must follow a special technique at each level in the administrative review process."). *See Randall v. Astrue*, 570 F.3d 651, 658 (5th Cir. 20 09); *Woodward v. Berryhill*, Civil Action No. 3:16cv126, 2017 WL 4403323, at *5 (S.D. Tex. Sept. 29, 2017).

The first step of this special technique is to review the "pertinent symptoms, signs, and laboratory findings" to determine if the claimant has a medically determinable mental impairment. 20 C.F.R. § 1520a(b)(1). If the answer at the first step is yes, then the ALJ is required to make a finding as to the degree of the claimant's limitation. 20 C.F.R. § 1520a(c)(2). To determine the degree of functional limitation resulting from the impairment the ALJ considers four broad functional areas: (1) activities of daily living, (2) social functioning; (3) concentration, persistence, or pace, and (4) episodes of decompensation. 20 C.F.R. § 1520a(c)(3).[3] After rating the degree of limitation, the ALJ will determine whether the mental impairment is severe. 20 C.F.R. § 1520a(d). "If we rate the degree of limitation in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area, we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities." 20 C.F.R. § 1520a(d)(1). If the mental impairment is severe, then the ALJ must determine if it meets or is equivalent to a Listing. 20 C.F.R. § 1520a(d)(2).

This 1520(a) analysis is not a residual functional capacity assessment, but is used only to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. 20 C.F.R. § 404.1520(a)(d); SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996). Nonetheless, some courts in this district have recognized that "the RFC assessment . . . must be consistent with [the severity analysis]." *Cruz v. Colvin*, Civil Action No. H-15-3389, 2016 WL 8672925 at *3 (S.D. Tex. December 28, 2016), *recommendation adopted* 2017 WL 1274296 (Jan. 27, 2017); *Flores v. Berryhill*, Civil Action No. H-17-30, 2017 WL 3412163 at *10-11 (S.D. Tex. August 8, 2017);

---

[3] 20 C.F.R. § 1520a(c)(3) was amended effective January 2017 and the description of the four broad functional areas changed, but the amendment is not applicable to the ALJ's 2015 decision.

*Moore v. Berryhill*, Civil Action No. 3:16-cv-035, 2017 WL 4351757, at *7 (S.D. Tex. Sept. 29, 2017).

### 2. The ALJ's RFC decision

Bonner does not challenge the ALJ's severity assessment. Instead, citing *Cruz* and *Flores*, Bonner argues that the limitations the ALJ incorporated into his RFC determination and hypothetical question do not adequately account for the moderate difficulties in concentration, persistence, or pace that the ALJ acknowledged in his severity assessment.

Based on his analysis of the evidence in the record, the ALJ incorporated the following non-exertional limitations into his RFC determination:

> The claimant retains the ability to perform detailed but not complex work. She should avoid working at a forced pace/assembly line/production rate pace. She can occasionally relate to coworkers, deal with the public and interact with supervisors.

The ALJ had previously concluded in his § 1520(a) severity analysis at step 2 as follows:

> With regard to concentration, persistence or pace, the claimant has moderate difficulties. She reported difficulty completing tasks timely and appropriately due to lack of motivation. She reported that she did not want to do anything. However, Dr. Lonnecker stated that the claimant's attention and concentration were adequately sustained.

It is clear that the ALJ credited Dr. Lonnecker's opinion regarding Bonner's attention and concentration. The ALJ in his more detailed RFC assessment found no evidentiary support for a finding that Bonner had additional limitations beyond those cited above.[4]

In making his RFC determination, the ALJ found that "the objective clinical findings (although not the only factor to be considered) do not support the degree of functional limitations which the claimant alleges." Dkt. 7-3 at 17. For example, she did not take an "inordinate amount

---

[4] In her briefing, Bonner complains only that the ALJ's hypothetical question was insufficient, she does not identify any additional non-exertional limitation that should have been incorporated into the ALJ's RFC finding, nor does she cite any record evidence supporting an additional limitation.

of medication," has not been hospitalized for any duration since her alleged onset, and "has not received the type of mental treatment one would expect for a totally disabled individual." *Id.* Also, the evidence shows that Bonner's condition improves with medication. *Id.* Bonner testified that she has been experiencing panic attacks for over 10 years, but she was able to work for many of those years. *Id.* at 18. While her reported activities of daily living are limited, the ALJ found this testimony not entirely credible, but even if credible, not attributable to "claimant's medical condition, as opposed to other reasons." *Id.*

The ALJ relied on the opinion of Dr. Lonnecker, a state agency consulting physician. Dr. Lonnecker opined that Bonner "might benefit from behavioral intervention/counseling" and her "presentation seemed somewhat exaggerated." Dkt. 7-9 at 18. Dr. Lonnecker also indicated that Bonner's "motivation to pursue vocational endeavors appeared quit limited." *Id.* The ALJ found Dr. Lonnecker's opinion credible and gave it partial weight because Dr. Lonnecker had an opportunity to examine Bonner, was familiar with Social Security Administration regulations and practices, and the opinion "was well-supported by medically acceptable clinical and laboratory diagnostic techniques and was consistent with the other substantial evidence in the claimant's case record." Dkt. 7-3 at 18. The court concludes that the ALJ's RFC determination is supported by substantial evidence, and adequately accounts for the "moderate difficulties in concentration, persistence, or pace" noted by the ALJ in his severity determination.

Plaintiff's argument relies on *Cruz*, which is distinct from this case. In *Cruz*, the ALJ found Cruz to have moderate difficulties in concentration, persistence, and pace, as well as a moderate restriction in social functioning. 2016 WL 8672925 *2. In that case, the ALJ's RFC analysis relied upon and purported to give "great weight" to the opinions of two state agency medical consultants, "each of whom reportedly found that Cruz had 'marked' difficulty

maintaining concentration, persistence, and pace," as did Cruz's treating physician. *Id.* at 3. The court in *Cruz* noted that the evidence of "marked" difficulty in concentration, persistence, and pace supported a finding of more than moderate limitations, not less. *Id.* Yet, the ALJ's hypothetical question to the vocational expert included only the limitation that Cruz "[m]entally would be able to understand, remember and carry out only simple instructions, just one to three step tasks that are routine and repetitive without frequent changes in duties." *Id.* at *3, n.1. Moreover, the RFC did not account at all for Cruz's moderate restriction in social functioning. *Id.* at *2. The court concluded "[c]onsidering the mental limitations described throughout the ALJ's opinion, the hypothetical question undoubtedly failed to capture those limitations adequately. As a result, the Commissioner failed to carry its burden at step 5, and its denial of disability is not supported by substantial evidence." *Id.* at 3. This type of internal inconsistency between the severity finding and RFC analysis was even more apparent in *Flores*, where the ALJ found Flores to have moderate difficulties in concentration, persistence, and pace, but posed a hypothetical to the vocational expert that included only a limitation to unskilled work. 2017 WL 3412163, at *10.

Under the facts of this case, the ALJ's RFC determination limiting Bonner to detailed but not complex work, with no forced pace/assembly line/production rate pace, reasonably incorporates Bonner's moderate difficulties in concentration, persistence, or pace that were discussed throughout the opinion. *See Jackson v. Astrue*, Civil Action No. 16-479, 2017 WL 3996437 *5 (M.D. La. Aug. 2, 2017) (citing *Bordelon v. Astrue*, 281 Fed. App'x 418, 423 (5th Cir. 2008) for the proposition that a limitation to simple, routine, tasks sufficiently accounts for moderate difficulties in concentration, persistence, or pace), *recommendation adopted by* 2017 WL 3996414 (M.D. La., Sep. 11, 2017); *Drury v. Comm'r of Social Sec.*, Civil Action No. 17-

cv-059, 2018 WL 632027 *4-5 (N.D. Miss. Jan. 30, 2018) (finding that the ALJ's RFC limitation to "simple, routine, repetitive tasks consistent with unskilled work; maintain attention and concentration for two-hour blocks" sufficiently accounted for claimant's moderate limitations in concentration, persistence, and pace); *Zuniga v. Colvin*, No. 2:17-CV-35, 2017 WL 7411229, at *8 (S.D. Tex. Dec. 18, 2017)("An ALJ need not include in the RFC the specific words 'moderate difficulties in the area of concentration, persistence, or pace' where, as here, the decision shows the ALJ considered those limitations in reaching the RFC determination"), *report and recommendation adopted*, No. 2:17-CV-35, 2018 WL 791377 (S.D. Tex. Feb. 6, 2018).

### 3. The hypothetical question posed to the vocational expert as part of step five adequately incorporated the limitations the ALJ found supported by the record.

The ALJ's ultimate finding that Bonner is not disabled under the Act is based on the vocational expert's identification of jobs a person matching the above hypothetical can perform. Dkt. 7-3 at 20. At the hearing, the ALJ asked the vocational expert the following hypothetical:

> [C]onsider you have someone of the same age, education, and past work experience as the claimant. And this person has no exertional limitations but does have non-exertional limitations, and they would be as follows. This person can understand, remember, and carry out detailed but not complex tasks. This person cannot work in forced-pace assembly-line or production-rate pace jobs. Due to impairment, this person can only occasionally deal with the public, can only occasionally relate to coworkers or interact with supervisors. . . . Would there be any jobs in the light exertional level available for this person?

Dkt. 7-3 at 55.

An ALJ's hypothetical question to a vocational expert must reasonably incorporate all the limitations recognized by the ALJ, and the claimant or his representative must be afforded the opportunity to correct any deficiencies in the question. *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001); *Masterson v. Barnhart*, 309 F.3d 267, 273 (5th Cir. 2002). Because these conditions are met in this case, the ALJ's decision is supported by substantial evidence.

### 4. The ALJ did not err in evaluating Dr. Kahan's opinion

In making his RFC determination, the ALJ gave little weight to the opinion of Dr. Kahan, Bonner's treating psychiatrist. A treating physician's opinion regarding the nature and severity of a patient's impairment will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence. *Newton* at 455. Nonetheless, the treating physician's opinions are not conclusive. *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). When good cause is shown, the ALJ is free to reject, assign less weight, little or even no weight, to the opinion of a treating physician:

> Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence.

*Newton*, at 456; *see also Greenspan*, 38 F.3d at 237. In addition, the ALJ's decision generally must state reasons for declining to give a treating physician's opinions controlling weight. *Newton*, at 455. In the absence of contrary medical evidence from a treating or examining physician, the ALJ must consider the following factors when deciding whether good cause exists to discount the opinion of a treating physician: (1) the physician's length of treatment of the claimant, (2) the physician's frequency of examination, (3) the nature and extent of the treatment relationship, (4) the support of the physician's opinion afforded by the medical evidence of record, (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician.[5] *Id*; *Kneeland v. Berryhill*, 850 F.3d 749, 760 (5th Cir. 2017) (citing *Newton*); *Nguyen v. Colvin*, Civil Action No. 4:13-CV-2957, 2015 WL 222328, *10 (S.D. Tex. Jan. 14, 2015).

---

[5] *Newton* refers to the criteria set forth in 20 C.F.R. § 404.1527(d)(2), but this regulation now appears at 20 C.F.R. § 404.1527(c)(2). *Kneeland*, 850 F.3d at 760 n.52.

Dr. Kahan opined that "at this time [Bonner] is not capable of self-care much less work." Dkt. 7-9 at 93. The ALJ correctly noted that "a treating physician's medical opinion of the nature and severity of a claimant's impairments is given controlling weight if it is well supported by the evidence." Dkt. 7-3 at 19. Nonetheless, the ALJ gave Dr. Kahan's opinion little weight because it "is not well-supported by medically acceptable evidence and is not consistent with the other substantial evidence. Dr. Kahan apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and uncritically accepted as true most, if not all, of what the claimant reported."[6] The court concludes that the ALJ's reasoning states good cause for his decision to accord Dr. Kahan's opinion little weight. Because the record contained conflicting medical evidence, including a divergent opinion from an examining physician, Dr. Lonnecker, it was not reversible error for the ALJ not to expressly consider each of the factors in § 1527(c)(2). "[W]here there is reliable medical evidence from a treating or examining physician that controverts the claimant's physician, the detailed inquiry of each factor in [20 C.F.R. § 1527(c)(2) is unnecessary." *Rollins v. Astrue*, 464 Fed. App'x 353, 358 (5th Cir. 2012).

### III. Conclusion

The court concludes that the ALJ's decision is supported by substantial evidence and is not based on an error of law. Thus, Bonner's motion is **DENIED**, the Commissioner's motion is **GRANTED**, and the Commissioner's decision denying benefits is **AFFIRMED**.

Signed on August 08, 2018, at Houston, Texas.

Christina A. Bryan
United States Magistrate Judge

---

[6] This is illustrated in Dr. Kahan's treatment notes, which consistently report that Dr. Kahan saw Bonner for a 15-30 minute "med check," and noted her statements, but performed no psychological testing. *See, e.g.*, Dkt. 7-9 at 3-4; 62-63; 80-81.